LEWIS J. BENNETT, Plaintiff, *v.* LOUIS SCHOELLKOPF, Defendant.

*Lease of a dock — interference with dredging by a State officer, not a defense to an action for rent.*

A lease of a dock at Buffalo, extending into the State waters of the Erie canal, recited that the lessee was entitled to "any and all rights," etc., given to the lessor, under resolutions of the Canal Commissioners, which provided, among other things, that the dock should not approach nearer than 100 feet of the channel, and by a further instrument in writing it was provided that, if the lessee at any time during the continuance of the lease should be removed from the demised premises by legal proceedings, or by the exercise of its sovereignty by the State, no further rent should become due under the lease.

The water immediately around the dock was not of sufficient depth to allow large lake vessels to moor to it, of which fact the lessee was aware at the time of the execution of the papers. There was no condition or stipulation, either in the lease or the supplemental contract, in regard to dredging or the deepening of the water around the dock.

The lessee entered into possession and attempted to dredge in the vicinity of the dock in order to so deepen the water as to enable deep draft vessels to approach it, and also attempted to dredge near the breakwater, when he was stopped and prevented from continuing the work by the assistant superintendent of the canals.

In an action brought to recover rent due under the lease, the lessee claimed that this interference by the superintendent of the canals excused him from the further payment of rent.

*Held,* that the lessee was not thereby excused from paying the rent.

MOTION by the plaintiff, Lewis J. Bennett, for a new trial on a case containing exceptions, ordered to be heard at the Appellate Division in the first instance upon the verdict of a jury in favor of the plaintiff rendered by direction of the court after a trial before the court and a jury at a term of the Superior Court of the city of Buffalo on the 3d day of October, 1895.

The action was brought to recover for an installment of rent claimed to be due from the defendant to the plaintiff by virtue of a lease of what was known as the Bennett dock, which is one of the series of piers or docks situate in the city of Buffalo, built near the State breakwater, and extending into the State waters of the Erie basin, which is formed by the State breakwater, and which separates its waters from the main waters of Lake Erie. The dock is about 400 feet in length and 50 feet in width, and was on the easterly

side of the channel, some 18 feet in depth, along which the vessels from the lake passed. The water immediately around the dock was shallow, and not of sufficient depth to permit the large lake vessels to moor to it, but was used for light vessels, canal boats and a floating elevator, which drew about eight feet of water. The dock was built by the plaintiff, under authority granted by the Canal Commissioners of the State of New York, in two resolutions made by them, one made December 20, 1867, and the other April 14, 1868. The resolution of December, 1867, gave the plaintiff permission to construct the dock, but the Canal Commissioners reserved the right " to enter into possession of the premises above granted wherever it may be necessary for the purpose of making repairs, or whenever the State may require the same for commercial purposes, or on failure on part of said Bennett (the plaintiff) to make the improvement contemplated (the dock) within reasonable time." In the April resolution, which was made on the application of Mr. Bennett and another asking additional privileges in the Erie basin, a reservation was made by the Canal Commissioners of the right to enter into possession of the premises whenever the Canal Commissioners in charge thereof should deem it for the best interests of the State. Both resolutions provided that the dock or the docks to be built under the permission granted *should not approach nearer than* 100 *feet of the channel above referred to.*

The lease was under seal and dated the 1st day of June, 1894, and provided for the leasing of the dock and dock privileges from the plaintiff to the defendant for the term of five years for a rent of $300 for the first year, and for $600 for each succeeding year of the term, to be paid semi-annually, with the right of renewal, reserving the right of the elevator to moor at such dock and reciting that the defendant was entitled to " any and all rights, privileges, easements, licenses, grants, appurtenances and hereditaments and belongings given to or vested in the said Lewis J. Bennett by virtue of any and all permissions, grants, conveyances, easements or estate, whether created or vested, in Lewis J. Bennett, verbally or in writing under and pursuant to resolutions of the Canal Commissioners of the State of New York " (referring to them). On the day of the execution of this lease, and as a supplement thereto, the parties to this action entered into a further instrument in writing whereby it was provided as follows :

" That if Louis Schoellkopf (the defendant) shall at any time during the continuance of the said lease, be removed or ejected from the premises *demised in said lease* by legal proceedings taken for that purpose, or his possession thereof shall cease by the exercise of its sovereignty by the State, and of such legal proceedings, that then no further rent shall become due under said lease. And it is understood that this clause is to be treated as an exception to the clause calling for the payment of rent in the said lease." This instrument contained the further provision to the effect that in case of litigation against any person owning, holding or occupying the premises rented, all expenses of such litigation were to be borne by the defendant, who was to have the control of the litigation.

And it was further provided that the defendant " agrees to use his best endeavors to protect and to secure the continuance of the license, permission and grant heretofore made to said first party (the plaintiff) of the right to use, improve and occupy the certain portion of the breakwater and Erie basin described in the lease this day executed between the parties hereto."

The Erie basin and the premises covered by the dock were a part of the canal system of the State, and the dock and the water surrounding it were connected with the Erie canal proper by means of slips, and jurisdiction over the whole thereof, under the laws of this State, vested in the Canal Commissioners. The defendant, at the time of the execution of these instruments, was fully aware of the rights acquired from the State by the plaintiff, the depth of water surrounding the dock, the location of the channel used by the larger vessels and for what purpose the dock was then being and had been used. There was no condition or stipulation either in the lease or the supplemental contract concerning the dredging or to deepen the water around the dock or in connection with it. The defendant entered into possession of the premises leased, by certain acts of ownership over them, and continued such possession until the trial of this action. Unless the defendant was excused from paying rent under the conditions of the contract, there was concededly due the plaintiff the sum of $300, with interest from June 1, 1895, the rent prior to June 1, 1895, having been paid by the defendant. The action was instituted in the Superior Court of Buffalo, and was a legal action brought to recover the rent.

The defense alleged in the answer was that the defendant was excused from paying rent after July 1, 1895, by reason of the interference of the superintendent of canals in preventing the defendant from deepening the water about the dock so as to permit the approach of deep draught lake vessels.    There was no conflict in the evidence upon the trial, which was to the effect that about the 1st of July, 1895, one McDonough, who was assistant superintendent upon the canals, and had charge of that portion of the canal system embraced within the controversy in this action, discovering the defendant attempting to dredge in the vicinity of the dock in order to deepen the water so that deep draught vessels could approach the dock, and also dredging near the breakwater, and deeming that injury might come to the interests of the State by reason of such dredging, directed that the work be suspended, forbade the dredging, and upon the defendant insisting upon continuing the dredging, threatened to interfere by force and prevent it.    This act the defendant claimed was an interference with his right to use the dock, and excused him from paying the rent claimed in this action.    The trial court sustained the defendant in this contention.    Both parties requested the direction of a verdict from the court.    The court directed a verdict for the rent due up to the time of the interference with dredging by the State, for the sum of thirty-seven dollars and fifty cents, to which direction the plaintiff excepted, and the trial court ordered the exceptions to be heard in the first instance at the General Term, and suspended judgment in the meantime.    It was stipulated upon the trial, and admitted by the defendant, that the State had in no manner interfered with the defendant's rights under said lease except in the matter of dredging.    No action or other legal proceeding was taken by the State to interfere with the defendant's use of the premises leased, but it was insisted by the defendant that the interference by the assistant superintendent were such legal proceedings as were contemplated by the contract.

*John C. Hubbell*, for the plaintiff.

*Charles P. Norton*, for the defendant.

WARD, J. :

It is apparent that, unless the defendant's contention that the act of the assistant superintendent of canals excused the defendant from

the payment of the rent stipulated in the lease after the dredging had ceased, can be sustained, we must sustain the exceptions of the plaintiff to the verdict as directed by the trial court. The defendant insists that as he was prevented by the action of the State authorities from making the use of the dock available for deep draught vessels, such vessels as were used in the commerce upon the great lakes, he was deprived of the beneficial interests in the dock, and the real purpose of his contract with the plaintiff failed; that the leasing of the dock by the plaintiff conferred the appurtenant right upon the defendant to so deepen the water as to permit the approach of the lake vessels to the dock, and that that right was within the spirit and purview of the contract between the parties, and being deprived of that right was an eviction, or, if not an eviction, a defense on the part of the defendant as against the plaintiff's claim for rent as being an act of sovereignty exercised by the State within the provisions of the supplemental contract. In the absence of any stipulation in the contract in regard to the dredging, and in the face of the provision in the contract that no dock was to be built within 100 feet of the channel, and in the face of the fact that the precise situation of the dock, the use to which it had been appropriated, the depth of the surrounding water, and the canal rights of the State authorities in the premises, all of which was known to the defendant when he entered into the lease, we cannot see how the defendant's contention can prevail.

It is elementary that the tenant while in possession of the demised premises cannot dispute his landlord's title or refuse the payment of rent except upon the violation of some stipulation of the contract itself which excuses him. The defendant took the premises and stipulated to pay the rent in the condition in which the premises were at the time of the making of the lease. His rights under the contract are measured and determined by its terms. The canal authorities were not seeking to deprive the defendant of any privileges leased to him by the plaintiff or interfering with the subject-matter of the lease. They were simply exercising a power essential to the protection of the public interests and preserving the conditions that existed with reference to the leased property as they existed when the lease was executed.

It was plainly contemplated by the supplemental contract that the

State authorities might interfere with the beneficial use of the dock in question, and the defendant stipulates, as we have seen, "to use his best endeavors to protect and to secure the continuance of the license, permission and grant heretofore made to said first party of the right to use, improve and occupy the certain portion of the break-water and Erie basin described in the lease."

The case of *Mattoon* v. *Monroe* (21 Hun, 74) is a strong authority to sustain the plaintiff's position here. Judge HARDIN, in an exhaustive opinion, upon facts somewhat similar to those in the case at bar, reaches conclusions which should prevail here.

And reference may profitably be made in this connection to *Til-you* v. *Reynolds* (108 N. Y. 558); *McKenzie* v. *Hatton* (141 id. 6); *People* v. *N. Y. & Staten Island Ferry Company* (68 id. 71); *Gallup* v. *The Albany Railway Company* (65 id. 1); *Gilhooley* v. *Washington* (4 id. 217).

These views lead to the conclusion that the plaintiff's exceptions should be sustained, and that the verdict be set aside and a new trial granted, with costs to abide the event.

All concurred.

Plaintiff's exceptions sustained, and a new trial ordered, with costs to abide the event.